UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shelley Hanson,

Plaintiff,

v.

Friends of Minnesota Sinfonia and Jay Fishman,

Defendants.

Civil No. 00-1900 JMR/FLN

**REPORT AND RECOMMENDATION**

---

Jill Clark, Esq., for Plaintiff.
Kelly A. Putney, Esq., for Defendants.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on Plaintiff's Motion for Partial Summary Judgment [#29]. This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, the Court recommends that Plaintiff's Motion be denied and Summary Judgment be entered in the Defendant's favor.

## I. FACTUAL BACKGROUND

This dispute arises from the injury of Plaintiff Shelley Hanson ("Ms. Hanson") sustained after being struck by a light fixture during a rehearsal at the Minnesota Sinfonia Chamber Orchestra. ("Sinfonia") After taking time off to recover, Ms. Hanson returned to the Sinfonia only to discover that she was terminated from her position as a clarinet player. (See Pl's Mem. Supp. Mot. Partial Summ. J. at 1) ( "Pl.'s Supp Mem.").) Ms. Hanson filed suit alleging (1) Disability Discrimination, failure of accommodation, and Breach of Confidentiality under the Americans with Disabilities Act

FILED NOV 2 1 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

("ADA"), the Minnesota Human Rights Act ("MHRA") (2) Negligent Infliction of Emotional Distress, (3) Invasion of Privacy, (4) Defamation, (5) Interference with Prospective Business Relations, (6) Breach of Contract; and (7) Promissory Estoppel. (See Compl. at 1.)

The Sinfonia provides chamber orchestra music to members of the public who might not ordinarily have access to such events. The Sinfonia's organizational structure consists of the Manager (also referred to as Managing Director) and the Artistic Director. (See Def.s' Mem. Supp. Mot. for Summ. J. and Opp. Pl.'s Mot. for Partial Summ. J. at 3-4 ("Def's Opp. Mem.").) The Manager performs all administrative tasks and the Artistic Director makes decisions regarding performers, venue and programming. The two aforementioned positions are considered employees of the Sinfonia, and as such, have payroll taxes withheld from their compensation, as well as workers compensation coverage. Defendant, Jay Fishman ("Fishman"), co-founder and Executive Director of the Sinfonia, also serves as the Artistic Director and Conductor. Sinfonia engages musicians to perform with the orchestra following auditions with the conductor. All Sinfonia musicians belong to Local 30-73 of the American Federation of Musicians, the Twin Cities union for musical entertainers. The Sinfonia musicians are governed by local union rules and a code of conduct governing how musicians are to conduct themselves during rehearsals, concerts and in the event a musician misses a scheduled concert.(See Id. at 4.)

Generally, the Sinfonia musicians are supplied a list of performance dates and venues from which they select the performances best fitting their schedules. All of the performers, including the Conductor are paid according to union list prices and on a "per set" basis. This payment is documented on tax form 1099, provided by the Sinfonia at the end of the year. The Sinfonia does not provide a pension plan, health insurance, life insurance, or any other benefits for the musicians.

In fact, Sinfonia musicians provide their own instruments occasionally provide a music stand and none of the musicians are precluded from participating with other groups or performing independently. Ms. Hanson has moved for a partial summary judgment with respect to her employment status with the Sinfonia.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

#### 1. Plaintiff's Motion for Partial Summary Judgment [#29]

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. U.S., 817 F.2d 1328, 1331 (8th Cir. 1987); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (holding that the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. See Anderson, 477 U.S. at 255. However, if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

The party opposing summary judgment may not rest upon the allegations set forth in its

pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. Id. at 248-49. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. If the opposing party fails to carry that burden, summary judgment should be granted. See Celotex, 477 U.S. at 322. Summary Judgment should "[s]eldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

**B. Legal Analysis**

**1. Musicians of the Minnesota Sinfonia are Independent Contractors**

In order for Ms. Hanson to bring a claim against the Sinfonia under the ADA and the MHRA she must be considered an employee. The Sinfonia argues that its musicians are independent contractors and that the local union also considers its musicians independent contractors. Ms. Hanson on the other hand contends she is a Sinfonia employee covered by the ADA and the MHRA.

The American with Disabilities Act and the Minnesota Human Rights Act do not apply to non-employees, therefore independent contractors are excluded from its coverage. See Minn. Stat. § 363.01(16); Birchem v. Knights of Columbus, 116 F. 3d 310, 312 (8th Cir. 1997); Farrington v. City of Richfield, 488 N.W. 2d 13 (Minn. Ct App. 1992). Courts evaluating ADA claims have applied the parallel definition of "employee" from Title VII claims. See Castellano v City of New York, 142 F.3d 58, 69 (2d. Cir. 1998). Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. §§ 2000e(f) (Supp. III). Given the absence of any helpful legislative guidance on the breadth of this circular definition, courts have developed tests to distinguish between

employees and independent contractors. See Spirides v. Reinhardt, 613 F.2d 826, 829-30 (D.C. Cir. 1979). Determining whether an individual is an employee or independent contractor is a question of law, that must be decided by the court after reviewing the particular facts of each case. See Berger Transfer & Storage v. Central States, Southeast and Southwest Areas Pensions Fund, 85 F. 3d 1374, 1377 (8th Cir. 1996). The Supreme Court has directed that the common-law of agency be used to establish whether a hired person is actually an employee. See Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323- 24 (1992); see also Schweiger v. Farm Bureau Ins. Co., 207 F. 3d 480, 483 (8th Cir. 2000). The Supreme Court in Darden summarized the common-law test as follows:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 106.

The applicable test that is overwhelmingly used in Minnesota is described as a hybrid of the common-law test and the economic realities test. See Wilde v. County of Kandiyohi, 15 F.3d 103, 105 (8th Cir.1994)(citations omitted). Under this test, the economic realities of the situation and totality of the circumstances surrounding the working relationship are taken into account. Id.

In addition, the economic realities test extends the "agency test" to include: (1) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and

explanation; (2) whether the worker accumulates retirement benefits; (3) whether the "employer" pays social security taxes; and (4) whether the worker accrues yearly leave. Wilde, 15 F. 3d 103 at 104. Factors used in both tests are nonexhaustive and consideration of the additional economic factors does not broaden the traditional common-law test. Id. Those factors that are equally irrelevant or of indeterminate weight and thus do not favor either party over the other, should be disregarded in light of the particular facts that apply in each case. See Eisenburg v. Advanced Relocation & Storage, 237 F. 3d 111, 114 (2d Cir. 2000).

Applying the relevant factors, this Court concludes that Ms. Hanson is an independent contractor and not an employee of the Sinfonia.

a. *Hiring party's right to control the manner of and means by which the product is accomplished.* The U.S. Supreme Court has held that the "the extent of control the hiring party exercises over the details of the product is not dispositive." See Community for Creative Non-Violence v. Reid, 490 U.S. 730, 752 (1989)(finding the control element was not established even though enough control to ensure the end result was met); see also, Hilton Int'l Co., v. NLRB, 690 F.2d 318, 320 (2d Cir. 1982)(finding that bandleaders and teachers were still independent contractors though the hotel controlled the working hours including overtime, locations, types of music, when music would be played, volume the music could be played and the number of members in the band). Our Court of Appeals has held that the existence of rules and regulations governing conduct are not definitive in determining the relationship between employee and independent contractor because of the necessity for this type of control to establish the functionality of the organization. See Graves v. Women's Prof'l Rodeo Ass'n, 907 F. 2d 71, 72-74 (8th Cir. 1990).

The product that the Sinfonia sought to accomplish is a professional orchestra performance and in reaching the desired end, this Court believes that Sinfonia exercised little control over the musicians. Specifically, Sinfonia did not control the musicians preparation until the limited rehearsals before performances, and does not control who is involved in the performances because each musician can elect the concerts to play in and may find substitutes for themselves should they change their minds after committing to the performance. Further, musicians are not precluded from playing with other groups or individually, which is generally forbidden in an employer/employee relationship of this type. Finally, unlike an employee that receives assignments, direction, and orders pertaining to the product on a daily basis, each individual musician controls how the end result will be met by becoming proficient with personal practice. Given the foregoing, this Court concludes that Sinfonia had little control over the means by which the product is accomplished.

*b.* *Skills required*. The U. S. Supreme Court has used the skill of an occupation to further assist in the delineation of independent contractor or employee status. See Reid, 490 U.S. at 752. Professional musicians require a high degree of technical proficiency. They audition to exhibit to others the skill level they have achieved at their own expense prior to being hired. See Schweiger v. Farm Bureau Ins. Co., 207 F. 3d 480, 485 (8th Cir. 2000). They do not receive "on the job" training to become musicians. As noted earlier, the Sinfonia musicians do not receive individual instruction on how much or how little practice it will take to accomplish the desired level of proficiency. No daily report or log is required to justify time used nor are the individuals compensated for personal practice time. Accordingly, the skill needed is provided by the Sinfonia musicians themselves without training by the Sinfonia. This court concludes that this type of skill

is indicative of an independent contractor.

c. *Source of the instrumentalities and tools*. An individual is considered an independent contractor where the individual is required to provide a majority of the tools necessary to perform his or her duties. Id. In the instant case, although Sinfonia provides the musical scores, rehearsal facilities, music stands and concert schedules, it does not provide the musical instruments, maintenance, insurance, or the attire for the musicians. The individual musician's investments far exceeds the hiring entity's. See Florida Gulf Coast Symphony, Inc. v. Dept. of Labor & Employment Sec., 386 So. 2d 259, 261 (Fla. Dist. Ct. App 1990). Because the source of the instrumentalities and tools is provided by the musicians they are more like independent contractors.

d. *Location of the work*. Personal practices take place at the location of the musicians choice and the Sinfonia does not supervise these practices. Rehearsals and concert locations are only selected by the Sinfonia staff as a part of their regular business obligations to produce the required end result. Therefore, this element can not be factored as the amount of time devoted in either area of "work" is indefinite and cannot be attributed to either employee or independent contractor.

e. *Duration of the relationship between the parties, and extent of the hired party's discretion over when and how long to work*. Under this factor the Court observes that the musicians do not commit to a particular number of seasons or a minimum number of concerts with the Sinfonia; however once a musician selects to perform in a particular concert he or she is responsible for performing or finding a substitute. If a more fruitful opportunity presented itself, the musician could leave at will and never perform with the Sinfonia again. Further, as noted earlier, each

musician retains complete discretion about practices and maintenance of instruments. Therefore, this Court concludes that the at will relationship lends itself more to the independent contractor status.

*f.* *Whether the hiring party has the right to assign additional projects to the hired party*. In thc instant case, the Sinfonia did not retain the right to assign additional projects because once the individual musician selects the concert he or she wants to perform new music is assigned, the practices to perfect that music are in the hands of the musician. The musicians are not required to write new parts or scores or to learn different instruments parts. Therefore, this Court concludes the lack of ability to assign additional projects supports the status of an independent contractor.

*g.* *Method of payment*. Payment by the project suggests the performer is an independent contractor. Reid,490 U.S. at 753. Here, Sinfonia musicians are paid wages using the union set scale on the "per set" basis. If the individual musician elects to participate he or she is compensated for that specific performance or for the series performances that must be done as a group. Sinfonia musicians are paid per project like independent contractors.

*h.* *Hired party's role in hiring and paying assistants*. This factor does not lend itself to the particulars of this case, because the nature of the work is such that it simply does not contemplate the use of assistants.

*i.* *Whether the work is part of the regular business of the hiring party*. In evaluating this factor the Court observes that it is understood that the work musicians perform is part of the Sinfonia's regular business as the provider of orchestra music. However, much like a temporary

agency worker that steps into the clients facility to provide the exact work the clients regular business requires, the hired agency person is not considered an employee of the client that is paying their salary. Similarly, this Court finds this factor is indicative of an independent contractor.

*j.* *Provisions of employee benefits*. The hiring party not providing any employment benefits, or contributing to unemployment insurance or workers' compensation funds is also evidence that an independent contractor relationship. Reid 490 U.S. at 753. Here, the Sinfonia does not provide any employee benefits such as health or life insurance, nor does it contribute to workers' compensation funds for the musicians. Although the Sinfonia paid the musicians union pension benefits for its musicians, Defendant Fishman contends that as a union member himself, it was necessary to keep the Sinfonia in good standing with the local union and the musicians by donating funds into the union pension fund for its musicians. Otherwise, the Sinfonia would find it difficult to work with union musicians and facilities. Accordingly, this Court concludes that the lack of employee benefits contributes to the independent contractor status.

*k.* *Tax treatment of the hired party*. That the Sinfonia reports payments to musicians for tax purposes on a form 1099 rather then a W-2, strongly weighs in favor of finding that Hanson was an independent contractor.

*l.* *How work relationship was terminated.* In this case, Ms. Hanson did not perform while recovering from injuries she sustained at a Sinfonia rehearsal. Both sides retained the ability to terminate the relationship at any time without cause. It is clear that upon plaintiff's return Fishman terminated her services. Therefore, this factor leads to the independent contractor status.

*m.* *Does worker accrue annual leave*. The Sinfonia does not distribute annual leave or sick leave. Consequently, this factor weighs in favor of determining that Ms. Hanson is an independent contractor.

*n.* *Social Security taxes paid*. The Sinfonia never paid into the social security fund for any of it's musicians. Accordingly, this factor contributes to the independent contractor status.

Based on the foregoing and viewing the evidence in the light most favorable to the non-moving party, this Court concludes that the musicians of the Minnesota Sinfonia are independent contractors, and Ms. Hanson is an independent contractor. The record reveals that although the Sinfonia exercised some control over Ms. Hanson with respect to scheduled concerts and rehearsals, she maintained a tremendous amount of freedom in electing which concerts to perform, whether to practice, how long to practice, and what level proficiency she chose to attain. She was paid per performance, she earned no benefits or vacation, and her compensation was all reported on Forms 1099 instead of W-2 Forms. As an independent contractor, Ms. Hanson can not maintain a claim of discrimination under the ADA or MHRA. Summary judgment must be granted for the defendant. As plaintiff's only federal claims must be dismissed, the court concludes that plaintiff's state claims should be dismissed without prejudice. Plaintiff can bring these claims in State Court.

## III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Partial Summary Judgment [#29] be **DENIED**.

2. Defendant's Motion for Summary Judgment [#35] be **GRANTED**.

DATED: Nov. 21, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500